IN THE UNITED STATES DISTRICT COURT
                        FOR THE MIDDLE DISTRICT OF GEORGIA
                                  ALBANY DIVISION

BRELINDA SULLEN,                      :
                                      :
    Plaintiff,                        :
                                      :
v.                                    :         1:05-CV-28 (WLS)
                                      :
THE WORTH COUNTY BOARD                :
OF EDUCATION, ET. AL.,                :
                                      :
    Defendants.                       :
_____       :

## ORDER

Before the Court is Defendants' motion for summary judgment. (Doc. 26). For the following reasons, Defendants' motion for summary judgment (Doc. 26) is **GRANTED.**

## DISCUSSION

**I.  Background**

In 2001, Plaintiff, an African-American female, was hired by Worth County High School ("WCHS") as a guidance counselor and girl's basketball coach. Following suspicious circumstances surrounding the admissions of Plaintiff's first cousin, Anterrio Daniels ("Daniels"), to WCHS said Plaintiff was terminated. Plaintiff claims, among other things, that her termination was the result of race discrimination. (Doc. 1).

**II. Factual Summary**

On January 16, 2003, Daniels was suspended from Co1quitt County High School ("CCHS"), pending a hearing before the Colquitt County Board of Education. Anterrio Daniels' father, Willie Daniels, subsequently withdrew Anterrio from CCHS on January 17, and immediately proceeded to enroll him at WCHS.

It is uncontested that when enrolling a new student WCHS utilizes a general process; first, the potential student must provide certain documentation, including prior transcripts, to Sherry Daniels, the guidance department secretary. Next, the potential student must meet with a guidance counselor (such as Plaintiff). As a guidance counselor, Plaintiff claims she was responsible for reviewing enrollment

1

information, assigning classes, and then forwarding the student's file to the registrar. Finally, the registrar, after imputing the student's information, will return the student's file to Sherry Daniels. It is uncontested that Sherry Daniels is assigned the responsibility of completing documentation of enrollment and that guidance counselors were not authorized to complete that process.[1]

The Worth County Board of Education ("the Board") also maintains certain eligibility requirements that students must satisfy before being enrolled at WCHS. A student may not be admitted if he is suspended from another school system. Furthermore, all students must be residents of Worth County. If the student does not reside with his parents, proof that the student resides in Worth County with a person who has legal guardianship over the student is required. Plaintiff admits she was aware of the aforementioned requirements.

A few months after Daniels enrolled at WCHS, the school became aware that a transcript he submitted incorrectly reflected attendance at WCHS prior to January 2003. An investigation ensued into Daniels' enrollment. After an investigation by school administration, Plaintiff was placed on paid administrative leave, allegedly for improperly enrolling Daniels. Following a hearing before the Worth County Board of Education ("the Board"), the same voted unanimously to terminate Plaintiff effective January 16, 2004.

Before making the decision to terminate Plaintiff the Board reviewed evidence and heard testimony from both WCHS administration and Plaintiff concerning Daniels' enrollment.[2] Plaintiff was alleged to have violated the Board's policies by:

> (1) Insubordination, (2) Willful neglect of duties, (3) Other good and sufficient cause: During the second semester of the 2002-2003 school [Plaintiff] accepted an out of area attendance student ([Plaintiff's] cousin [Daniels]); who had been suspended on January 16, 2003, pending an expulsion hearing in [CCHS]; tampering with his transcript; providing him unearned course credit; violating [the Board] Policy... and WCHS Procedures; and not being forthcoming about the incident.

On Daniels' student information sheet he was listed as living with his parents at a Worth County address. In fact, however, Plaintiff knew that Daniels' parents did not live in Worth County.

---

[1] Plaintiff's assertion that "she helped [Sherry Daniels] when it was busy" does not contradict Defendant's statement respecting Sherry Daniel's responsibility for completing enrollment such that it may constitute a genuine dispute. (See Doc. 36).

[2] None of the claims set forth in the present act were asserted before the Board.

2

Rather, Plaintiff claims, that Daniels' father stated that Daniels' sister, who resided at the Worth County address listed on the student information sheet, was going to become Daniels' legal guardian. Daniels' father neither presented proof of Daniels' sister's legal guardianship over Daniels nor did the sister ever actually take legal guardianship over Daniels. Plaintiff contends that students have been allowed to enroll without all required paperwork if there were assurances the paperwork would be forthcoming.

There is no dispute that Daniels had been suspended prior to enrolling at WCHS. Plaintiff alleges she was ignorant to this fact; and, Plaintiff claims she was told by Daniels' father CCHS would not suspend Daniels if he was immediately withdrawn from CCHS.

There is also no dispute that the investigation into Daniels' enrollment revealed two fraudulent CCHS transcripts in his file, both reflecting higher grades than were actually received at CCHS. The first incorrectly reflected Daniels attending WCHS prior to January 2003. The second correctly reflected Daniels attending CCHS prior to January 2003. Of the two, only the former contained identical grades to those entered by the Plaintiff onto the Transcript Transfer Form and Daniels' student folder on January 17, 2003, the same day Daniels and his father came to WCHS to enroll Daniels.

Faced with the above, the Worth County Superintendent's position before the Board was that Plaintiff must have either altered the transcripts for Daniels or at least knew she was enrolling him based on fraudulent transcripts. Additionally, the WCHS principal testified before the board that Plaintiff told him, "she knew that the transcript that Daniels' father gave me was not correct," but that she "got caught up in the situation and wanted to help a black male whom I thought was worth saving." (Doc. 26, Exh. A). Plaintiff denies altering the transcripts, knowing the transcripts were fraudulent, and making such comments to the WCHS principal. Rather, she presented before the Board the testimony of Daniels' father, who claimed he single-handedly altered the transcripts. He also claimed that Plaintiff was given the second transcript on January 17, 2004—although the grades on that transcript do not match those entered by Plaintiff on said day—and that, at a later date, he inserted the other transcript into Daniels' file without Plaintiff's knowledge. Plaintiff also alleged that because WCHS was using a new system to insert information on transcripts, it was easier for her to overlook the fraudulent information.

After the Board voted, based on the aforementioned evidence, to terminate Plaintiff from her position, Plaintiff filed a claim of race discrimination with the EEOC. Plaintiff received her Notice of Right to Sue in December 2004. Shortly thereafter, Plaintiff brought this action.

**III.     Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure establish that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); *see also* Allen, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Celotex Corp., 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Id. at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. Celotex Corp., 477 U.S. at 322-23;

4

Allen, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**IV.     Legal Analysis**

**A.     Title VII and 42 U.S.C. § 1983**

There are three ways in which a plaintiff can establish a prima facie case of racial discrimination: "by presenting direct evidence of discriminatory intent; by meeting the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or by demonstrating through statistics a pattern of discrimination." Early v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). "'Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." Early, 907 at 1081 (alterations in original)(citations omitted). An example of direct evidence would be a memo from management that said, "'Fire Early – he is too old.'" Id.

In this case, there is no direct evidence of discriminatory intent and Plaintiff does not seek to prove her case by statistical evidence. Therefore, Plaintiff must prove her case by satisfying the inferential test as set forth in McDonnell Douglas. To establish a prima facie case of race discrimination, a plaintiff must prove: "(1) [she] belongs to a racial minority; (2) [she] was subjected to adverse job action; (3) [her] employer treated similarly situated employees outside [her] classification more favorable; and (4) [she] was qualified to do the job." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003)(citations omitted); Holifield v. Reno, 115 F.3d 1555, 1562 (1997). If, respecting either claim, Plaintiff establishes a prima facie case, the burden then shifts to Defendants to put forth a legitimate, nondiscriminatory reason for Defendants' actions. Id. at 1564. The burden then shifts to Plaintiff to show that the articulated reason was merely pretext for discrimination. Id.

For purposes of this motion, the Defendants concede that the first, second, and fourth prongs of the inferential test are satisfied. In respect to identifying a similarly situated person from a different class who was treated more favorably, Plaintiff, in her opposition to summary judgment (Doc. 36), points to two individuals. The first involves a teacher who may have been investigated for improper contact with a student through internet messages; the teacher was not terminated or reported to the

5

Professional Standards Commission. The second involves a teacher who was accused of child molestation and cutting her wrist in front of a class. Neither of the two incidents on which the Plaintiff relies can be considered "similarly situated" for supporting her burden of proving a prima facie case of race discrimination.

Assuming that Plaintiff has met her burden of proof, Defendants presented several legitimate, non-discriminatory reasons for its employment action. First, there is no dispute that Plaintiff knew Daniels' parents lived outside of Worth County, that Daniels lived with his parents on the day she enrolled him, and that students could not be enrolled when residing outside Worth County. Second, there is no dispute that Daniels had been suspended prior to enrolling at WCHS, which was prohibited. Third, the Board heard testimony from the WCHS principal alleging the Plaintiff admitted to enrolling Daniels based on fraudulent transcripts. The Plaintiff denied the incident but failed to offer why the principal would give false testimony. Further supporting the Board's decision are the documents themselves; the first transcript, Transcript Transfer Form, and Daniels' student folder all have corresponding grades, which sheds doubt upon Plaintiff's version of events. Finally, and most obviously, the Board was aware of the potential incentive to Plaintiff to violate Board policy—namely, Daniels being Plaintiff's first cousin.

In sum, Plaintiff, proffering excuses, even if valid, do not negate the cumulative impact of the circumstantial evidence presented to the Board, which could clearly support a honest belief the Plaintiff committed the violations. *See* Knight, 330 F.3d 1317, 1318 n.6. (2003) ("The law is clear that... an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.")(citations omitted). When considering the context in which the Board made its decision, there is nothing to indicate a bias or illegitimate intent. Moreover, Plaintiff fails to present any evidence, apart from that already discussed, that would tend to show Defendants' articulated reasons as mere pretext for discrimination. The Court finds that Plaintiff has failed to show the existence of a genuine issue of material fact. Accordingly, Defendant's motion for Summary Judgment (Doc. 26) is **GRANTED** as to Plaintiff's Title VII and §1983 racial discrimination claims.

**B.** **Breach of Contract and Tortious Interference with Contract**

The Defendants argue that they are entitled to summary judgment on the claims of breach of contract and tortious interference with contract because, procedurally, the Plaintiff was required to raise them in the first instance with the Board, pursuant to O.C.G.A. § 20-2-1160. In relevant part, § 20-2-1160 states independent boards of education "shall constitute a tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of school law."

Plaintiff does not refute the Defendant's proposition, which, upon review is properly supported by precedent. *See* Arp v. Bremen Board of Education, 171 Ga. App. 560 (1984) (former high school basketball coach alleged city board of education breached his contract by firing him was required, via § 20-2-1160, to raise the claim initially before the board.). Therefore, the Defendants' motion for summary judgment (Doc. 26) on Plaintiff's breach of contract and tortious interference with contract is **GRANTED**.

### C. Defamation[3]

To maintain an action for defamation the Plaintiff must establish four elements: "(1) a false and defamatory statement concerning the [P]laintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting to at least negligence; and (4) special harm." Mathis v. Cannon, 276 Ga. 16, 20 (2002). Upon review, it is evident that the Plaintiff fails to satisfy the second prong—no where has the Plaintiff alleged publication to a third party of unprivileged communication. Accordingly, the Defendants' motion for summary judgment (Doc. 26) on Plaintiff's defamation claim is **GRANTED**.

### D. Intentional Infliction of Emotional Distress

To support a claim for intentional infliction of emotional distress the Plaintiff must establish: (1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the emotional distress (4) which is severe. Bridges v. Winn-Dixie Atlanta, Inc., 176 Ga.App. 227, 230 (1985). Conduct that falls within the ambit of extreme and outrageous must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. United Parcel Service v. Moore, 238 Ga.App. 376,

---

[3] The Defendants failed to raise the Georgia Tort Claims Act. O.C.G.A. § 50-21-20. Therefore, the merits of Plaintiff's tort claims will be addressed notwithstanding.

377 (1999). The question of egregiousness of the alleged conduct is a question of law. Yarbray v. Southern Bell, 261 Ga. 703, 706 (1991). The Board, after conducting a hearing in which it heard evidence and testimony, sustaining the Superintendent's decision to terminate Plaintiff does not constitute extreme and outrageous conduct. Therefore, Defendants' motion for summary judgment (Doc. 26) on Plaintiff's claim of intentional infliction of emotional distress is **GRANTED**.

    **E.**    **Negligent Infliction of Emotional Distress**

As stated by the Georgia Supreme Court, "In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." Lee v. State Farm Mut. Ins. Co., 272 Ga. 583, 584 (2000), *quoting*, Ryckeley v. Callaway, 261 Ga. 828 (1992). As Plaintiff fails to allege any physical injury, and such injury being required, the Defendant's motion for summary judgment (Doc. 26) on Plaintiff's negligent infliction of emotional distress claim is **GRANTED.**

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**.

**SO ORDERED**, this __4th__ day of September, 2007.

          /s/W. Louis Sands
          **THE HONORABLE W. LOUIS SANDS,**
          **UNITED STATES DISTRICT COURT**